MISSOURI, K. & T. RY. CO. OF TEXAS v. KINSLOW. (No. 7212.) †

(Court of Civil Appeals of Texas. Dallas. Jan. 2, 1915. On Motion for Rehearing, Feb. 6, 1915.)

**1. RAILROADS (§ 273½*)—INJURIES TO LICENSEES—DUTY OF RAILROAD.**

A railroad owes a bare licensee no duty to keep its premises safe, but as to an invitee it must exercise ordinary care to keep its premises reasonably safe.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 273½.*]

**2. RAILROADS (§ 275*)—INJURIES TO LICENSEES—INVITEES.**

A public weigher who had placed upon a railroad platform a shipment of cotton, which by mistake contained two bales not intended to be shipped, and who thereafter went to the platform to get the two bales, and, not finding them there, attempted to enter the car into which some of the cotton had been loaded and was injured when the truck iron leading from the platform to the car fell under his weight, was an invitee of the railroad company and not a bare licensee, since his purpose in entering the car was incidental to and connected with the railroad's business, though not of direct pecuniary benefit to the railroad.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 873–877; Dec. Dig. § 275.*]

**3. NEGLIGENCE (§ 32*)—"LICENSE" DEFINED.**

A license implies permission or authority and is more than mere sufferance, but it does not imply an invitation.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, First and Second Series, License.]

**4. RAILROADS (§ 282*)—INJURIES TO LICENSEES—PLEADING—ASSUMPTION OF RISK.**

A railroad cannot avoid liability for injuries to an invitee on the ground of assumption of risk where it did not plead that defense.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

**5. TRIAL (§ 192*)—INJURIES TO LICENSEES—INSTRUCTIONS—ASSUMPTION OF FACTS.**

Where the evidence conclusively shows that plaintiff was an invitee at the time he was injured, an instruction requiring the railroad company to exercise ordinary care to keep its premises safe for him was not erroneous for assuming that he was an invitee.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

Appeal from District Court, Grayson County; W. J. Mathis, Judge.

Action by N. O. Kinslow against the Missouri, Kansas & Texas Railway Company of

Texas. Judgment for the plaintiff, and defendant appeals. Affirmed and motion for rehearing overruled.

C. C. Huff, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant. E. J. Smith, of Denison, and Freeman & Batsell, of Sherman, for appellee.

TALBOT, J. The appellee, Kinslow, instituted this suit against the appellant railway company to recover damages for personal injuries received by him on December 18, 1911, alleged to have been caused by appellant's negligence. On that day a number of bales of cotton had been delivered by the firm of McMahan & Ferrell to appellant on its platform at Sadler, Tex., for shipment. The appellee, as the employé of McMahan & Ferrell, looked after the placing of the cotton on appellant's platform and marked it. After this was done McMahan & Ferrell received a bill of lading and cotton tickets for the cotton from appellant's agent, and, upon examination of them, discovered that they showed the shipment of two more bales of cotton than was intended to be shipped. The appellee was then directed by McMahan & Ferrell to go to appellant's platform, check the cotton, find the two bales, and take them out of the shipment. Appellee, in obedience to these instructions, returned to the platform, and when he got there found that appellant's servants were loading the cotton which McMahan & Ferrell had delivered for shipment into a car and had already put therein six or eight bales. For the purpose of trucking the cotton into the car, appellant's servants had laid a truck iron or runway from the platform to the car, one end of the same resting on the floor of the car in the doorway and the other end on the platform. The truck iron is described as being 3½ feet wide, 4½ feet long, and weighing 500 pounds, and that each end deflected in opposite directions a distance of 2½ inches from the end. It is charged that, inasmuch as the ends of the truck iron deflected in opposite directions, the same when laid upon a level surface necessarily extended upward a distance of 2½ inches, making it necessary to roll the trucks loaded with cotton over the upturned end of the truck iron. Appellee, not finding the two bales of cotton not intended for shipment on the platform, started over this truck iron to see whether they had been hauled into the car when the truck iron fell between the car and the platform, carrying him with it, and he received thereby the injuries on account of which he brought this suit. Among the grounds of negligence alleged were that "the servants and employés of defendant negligently permitted the said truck iron to get in such position that the end of same at said car door was not properly supported and would fall to the ground when plaintiff undertook to pass over and across the same into said car"; that "the peculiar shape of said truck iron above set out rendered it necessary that, when same was being used as aforesaid, it be carefully watched to prevent the same being pushed outward from said car and into such position that the same was liable to fall by the passing of the said trucks over same in loading said car, and to keep said truck iron securely situated on said car door so that passing over and across same was safe, and the said servants and employés engaged in loading said car negligently failed to so watch the said truck iron and permitted the same to be moved outward to or near the edge of said car door, and to get in such position that the same would and did fall under the weight of plaintiff while he was undertaking rightfully to cross from said platform to said car over said truck iron." The defenses pleaded were a specific denial of the allegations of the appellee's petition and contributory negligence on his part in that he failed to look at the truck iron to see what position it was in before he stepped on it, well knowing, as he did, that the same was not cleated or fastened. At the conclusion of the evidence the appellant requested the court to charge the jury to return a verdict in its favor. This was refused, and the case submitted on special issues. Upon the jury's findings judgment was rendered in favor of appellee for the sum of $8,000.

[1] The appellant's first assignment of error is as follows:

"The court erred in refusing to give defendant's requested charge instructing the jury to return a verdict for the defendant because the undisputed evidence shows (1) that the plaintiff was not in the employ of the defendant in any capacity, and was not entering the car on any business of defendant; (2) that plaintiff was on defendant's premises and entering its car upon his own business or that of his employers, McMahan & Ferrell; (3) That the truck iron that was being used by persons loading cotton into defendant's car from its platform was provided for and used as a bridge between the platform and the car, not for persons to walk over as a means of entering a car from the platform, but as a means of loading freight from the platform into the car by running trucks loaded with freight from the platform over the truck iron into the car; (5) that plaintiff had not said anything to the defendant, its agents or servants, about entering the car; they had no knowledge of his intention or purpose of entering the car, and no permission was given by the defendant or its agent on said occasion for plaintiff to enter the car. The defendant, therefore, did not owe the plaintiff any duty of placing or maintaining the truck iron in a reasonably safe position for him to use in passing over it. On the other hand, being, at most, only a licensee, plaintiff, in entering upon defendant's premises and into its car, accepted the same as he might find it and used it at his own risk, and defendant is in no way liable for any injury sustained on account of his falling while attempting to pass from the platform over the truck iron into the car. And under the facts no liability was shown against defendant, and it was entitled to have the jury instructed to return a verdict in its favor."

This assignment presents the chief and difficult question for solution arising on the appeal, Was appellee, in attempting to go over

the truck iron into the car, a bare licensee? If he was, then appellant did not owe him the duty of exercising ordinary care to provide him a safe way from the platform into the car, and he had to accept the truck iron or runway in the condition in which he found it. If, on the other hand, appellee was attempting to use the truck iron as a means of entering the car in question by invitation of appellant, either express or implied, then appellant owed him the duty to use reasonable care to see that the truck iron and its position were reasonably safe for that purpose.

[2] The testimony of appellee, as stated by counsel for appellant in their brief, and which is practically without contradiction, is the strongest in support of the theory that appellee was a bare licensee in his attempt to use the truck iron, found in the record. This statement of said testimony is as follows:

"Mr. Kinslow testified: 'I am the plaintiff in this case. I will be 51 years old in February. Have lived at Sadler all my life. Am public weigher there, and have been for about eleven years. My other business is farming. On the day of the injury I was employed by McMahan & Ferrell. Under my arrangement with them I was to move this cotton from their cotton yard and place it on the depot platform for shipment. I went to the bank to see Mr. McMahan about some cotton, and he told me he had made a mistake of two bales, and for me to go down and check the platform and check out these two bales and send them back to the cotton yard. When I got to the platform I discovered that the 135 bales of cotton which were to be shipped to the Denison mill was being loaded into the car, which was about midway of the platform. The cotton was being carried from the platform to the car with a pair of cotton trucks over the truck iron extending from the platform into the car. I undertook to cross over the truck iron and go into the car and get a check on it and see if the two bales were in there. As I went to go over the truck iron a boy brought some trucks out, so I waited until he had passed over it. I then stepped on it and it fell. I was looking where I was going as I would look if I was going anywhere else. I had been in the habit of crossing over the truck iron at that time for a period of about 16 years. It had never fallen with me before. When I stepped on it it must have fallen out of the car and turned turtle. When I weighed cotton for McMahan & Ferrell I took the cotton and put it on the platform and marked it and checked it—that is, I would have it put on the platform. McMahan & Ferrell paid me 15 cents a bale to put the cotton on the platform and mark and check it. This was my contract with them. Of course I had nothing to do with the loading of the cotton into the car. When I placed it on the platform and marked and checked it, it was for the railroad company to load it in the car and ship it; that was their business. On this occasion I was going to see about two bales of cotton that seemed to have gotten mixed with the 135 bales by mistake. I did this at the instance of Mr. McMahan. I did not see the agent before I started to go into the car. I never said anything to him about there being a mistake. The mistake was not made by me or my man. Whatever mistake there was was made by Mr. McMahan. It was not made by the railroad agent or any one connected with the railroad company. I had been acquainted with this truck iron or running board for a long time, probably all the time I had been public weigher there.

At one time I had a contract with the railroad company for loading the cotton, and loaded it for several years. At that time I used this same running board. I was perfectly familiar with the construction of it, and how it was used in bridging the space between the car and the platform for the purpose of trucking the cotton over it. At the time I had the contract for loading the cotton the running board was in about the same condition it was at the time I got injured. At that time the trucks would gradually work it out and I would have to replace it. It would at times get jostled and I would have to watch it in running the trucks over it. It was the daytime when I got hurt; some time in the evening, before night. I know the running board must have been resting on the car because the boy came out with the trucks. I had to stop until he got over, and after he got over it I stepped on it. I know it must have been resting on the car or it would have fallen of its own weight. Certainly I did not stop to see how the running board was. I do not know how much it was lapping over the car door. Certainly I did not stop to examine to see how it was. I did not look for that purpose. I make it a habit after the car is loaded to go up there and check it over for my protection, to see that the correct number of bales are there. Under my arrangement with this shipper it was my business to see that he shipped out the correct number of bales.'"

The courts have sometimes had difficulty in distinguishing a license from an invitation on the one hand, and from mere sufferance or acquiescence on the other. So, the difficulty we encounter in disposing of this appeal is the determination, from the facts shown, of the question of whether appellee was a mere licensee or an invitee in his attempted use of the truck iron.

[3] It is held that a license implies permission or authority, and is therefore more than mere sufferance, but does not imply an invitation. And one may have permission to do a certain thing for his own benefit and yet not be invited to do so. If, however, a person has permission to go upon the premises of another, he will, as a general rule at least, be deemed to be a licensee; and if he is invited he is more than a licensee, and the owner is bound to use ordinary care to save him from injury while upon the premises. So that one who goes upon the premises of a railroad company merely to speak to an employé of the company and not upon business with the company is a mere licensee, but if his presence there is "for the purpose of loading or delivering and receiving freight he is not a mere licensee, but is entitled to the care due one who is invited to come upon the premises of another." Elliott on Railroads, vol. 3 (2d Ed.) § 1248. It is clear, we think, that if appellee had been injured while upon appellant's platform delivering and checking the shipment of cotton in question, by reason of the failure of appellant to exercise ordinary care to see that the platform was safe for the transaction of that business, it could not reasonably be denied that he was there by the implied, if not the express, invitation of appellant. He was the representative of McMahan & Ferrell, the shippers of the cotton, and for the purposes of its

shipment he occupied the same relation to appellant that either McMahan or Ferrell would have occupied had he been present in person delivering and checking the cotton. Touching the shipment of the cotton and the appellee's connection with it, Mr. McMahan testified:

"I know the plaintiff, N. O. Kinslow. I heard of the occasion of him being injured. On that day I had a transaction with him. I shipped 135 bales of cotton to Denison that day, to the Denison mill. I had a conversation with Mr. Kinslow in reference to that shipment. I had him to load the cotton on the platform and to check it for me. I made a statement to him in reference to an error in the shipping list. At that time there was loaded on the platform 137 bales of cotton, and we got our bill of lading and went to the bank to settle, and in checking the cotton tickets there was 137, which should have been 135, and then we called him and had him check the cotton, and at this time they had loaded part of it in the car. I directed him to check the cotton to get the two bales that didn't belong in the list and take them out of the shipment. That was before he was injured. It was just a few minutes before the occurrence of his injuries that I give him these directions."

At the time appellee received his injuries he was endeavoring, in obedience to the foregoing instructions given him by his employer, McMahan, to find and withdraw from the shipment the two bales of cotton included therein by mistake. He was not then engaged in doing something necessary to be done originally in making the shipment of the cotton, nor was he engaged in receiving freight consigned to him or his employer; and the question is, Was appellee, under all the circumstances shown, clothed with implied authority by invitation to enter appellant's car in search of and for the purpose of reclaiming the two bales of cotton delivered to it by mistake for shipment? We have concluded this question should receive an affirmative answer. It seems to be settled law that where a person has entered on the premises of another under invitation, express or implied, he is bound by that invitation, and becomes a bare licensee if he goes to some other part of the premises for purposes of his own, or remains on the premises beyond a reasonable time after permission has expired; but we do not believe this principle has application here. The appellant was engaged at the town of Sadler, where appellee was injured, as a common carrier for hire, in the business of receiving and transporting cotton and other commodities. It had, on the day appellee was injured and but a very short time before the accident happened which resulted in appellee's injury, received from him, as the agent of McMahan & Ferrell, a number of bales of cotton for shipment. The number of bales intended to be shipped was 135, but when the bill of lading and cotton tickets issued by appellant were examined it was discovered that two bales more than that number had been inadvertently or by mistake delivered for shipment. With a view of correcting this mistake, appellee attempted to enter the car into which the intended 135 bales shipment, or a part thereof, was being placed for transportation, and, according to the finding of the jury, was injured through the negligence of appellant in failing to have the truck iron, provided and being used as a means of entering the car from the platform, placed and adjusted in a reasonably safe manner for that use. The purpose of appellee in attempting to enter appellant's car was clearly, it seems to us, connected with the business in which appellee was engaged, and brings his case within even the rather strict rule announced by the Supreme Court of Massachusetts (Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463), that—

"to come under an implied invitation, as distinguished from a mere licensee, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant."

That the object of appellee in trying to enter the car in question was incident to and connected with appellant's business seems very clear, and that both had some interest in the subject to which appellee's business related can hardly be questioned. That no pecuniary benefit would accrue to appellant by the withdrawal of the two bales of cotton from the shipment, or that its retention in the shipment would probably have slightly enlarged its freight charges, is immaterial. Appellant was interested in the subject to which appellee's business related, to the extent of not transporting over its lines cotton which appellee or those he represented did not intend should be transported, and to accord to him and them as its customers more than a bare permission to enter upon its premises to correct an inadvertence or mistake in reference to the subject of shipment. It occurs to us that appellant was at least under some moral obligation in this case, not only to say to appellee, come and correct this mistake by taking out of the shipment the two bales of cotton, but to assist to some extent in locating them, and, a part of the cotton having been loaded in the car, appellee could very naturally and reasonably infer that he was invited to enter the car for that purpose. It follows that, in our opinion, appellee's attempted entrance into appellant's car and his use of the truck iron for that purpose was by invitation of appellant, and hence its peremptory instruction for a verdict in its favor was properly refused.

[4] The next proposition of appellant is that, the position and method of use of the truck iron being open and obvious to plaintiff, and he being familiar with such use and the liability of the iron to slip, he assumed the risk of its falling. It is a sufficient answer to this proposition to say that the issue

of assumed risk was not in any manner pleaded by defendant, and that without such a plea the question cannot be raised and relied on as a defense. Railway Co. v. Harris, 95 Tex. 346, 67 S. W. 315; Price v. Consumers' Cotton Oil Co., 41 Tex. Civ. App. 47, 90 S. W. 717. As hereinbefore stated, the defenses pleaded by the appellant were a specific denial of the allegations of the appellee's petition and contributory negligence.

[5] The court submitted to the jury the following issue:

"Did the servants, agents, and employés of defendant fail to exercise ordinary care in placing or maintaining said truck iron in such position that same was not reasonably safe for plaintiff to use in passing over same into said car?"

In explanation of this question, which the jury answered in the affirmative, the court told the jury that "it was the duty of defendant, its servants and employés, in loading freight into said car at said time, to exercise ordinary care to so place and maintain said truck iron in such position that same would be reasonably safe for plaintiff to use said car at said time"; and by its sixth assignment of error appellant complains of this explanation, and says the same does not correctly state the law applicable to the facts, because plaintiff, in going over the runway into the car, was only a licensee, and appellant owed him no duty to exercise care to provide him a safe way from the platform into the car; that—

"the charge was erroneous, in that it assumed that plaintiff was an invitee, whereas the undisputed evidence shows him to have been only a licensee; that the charge was on the weight of the evidence, in that it assumed that plaintiff was an invitee, whereas, if the evidence did not show plaintiff to be a mere licensee, it was not of such character that the court could declare him to be an invitee, but the question was one for the jury; that the charge was on the weight of the evidence, because, if the evidence did not conclusively show that the risk and danger of using the truck iron as a walkway were patent and obvious to plaintiff so that he assumed such risk, it at least so strongly tended to prove this fact that the court could not assume the contrary and take the issue from the jury."

The issue of assumed risk was not in the case, and we have already held that the evidence shows that appellee, in attempting to enter the appellant's car, was not a bare licensee, but an invitee. Whether one claiming to have been injured by the defective condition of the premises on which the accident resulting in his injury occurred was a licensee or an invitee may often be a question of fact for the determination of the jury, but we think the evidence in the case at bar so conclusively shows that appellee was an invitee that nothing remained upon the close of the evidence upon this question but for the court to instruct the jury, as he did in connection with No. 2 submitted to them, that the duty devolved upon appellant to exercise ordinary care to so place and main-

tain the truck iron that it would be reasonably safe for appellee to use in entering the car. There are some other assignments of error, but they have been disposed of against appellant by what has been already said. We think all the material issues of fact arising upon the pleadings and evidence were fully and fairly submitted to the jury, and their findings are justified by the evidence. It is not contended that the verdict is excessive, nor do we find any assignment asserting that the evidence fails to show actionable negligence on the part of appellant in permitting the truck iron · to be in the position it was in when it fell and caused appellee's injuries, and believing, as we do, that no reversible error is pointed out, the judgment is affirmed.

*Affirmed.*

### On Motion for Rehearing.

We probably erred in stating in our original opinion that McMahan & Ferrell received cotton tickets from appellant's agent for the cotton placed upon its platform for shipment. There is no direct testimony showing who issued the cotton tickets referred to, or from whom McMahan & Ferrell got them, and these tickets, and not the bill of lading issued by appellant's agent, showed there were two bales in the lot not intended to be shipped. McMahan's statement is:

"At that time there was loaded on the platform 137 bales of cotton, and we got our bill of lading and went to the bank to settle, and in checking the cotton tickets there was 137, which should have been 135, and then we called him (Kinslow) and had him check the cotton, and at this time they had loaded part of it in the car. I directed him to check the cotton to get the two bales that didn't belong in the list and take them out of the shipment. That was before he was injured. It was just a few minutes before the occurrence of his injuries that I give him these directions."

This, however, does not require any change in the disposition made of the appeal. We think the case, upon the practically undisputed facts, has been correctly decided. The appellee had been cotton weigher at Sadler for a number of years, and, as further supporting our conclusion that he was an invitee, we quote from the testimony of appellant's agent, C. W. Atkins, as follows:

"Yes, so far as I know, the cotton weigher had free access to the platform and cars. Frequently he went in and out of the cars checking cotton on the platform. He was on the platform at the time he was checking cotton. As to whether it was with my knowledge and permission, I never give him permission to. I didn't object to it; no, sir. I didn't know he was there on this date. I have known of him being on the platform. I never saw him in the cars; he could have gone in if he wanted to."

The case is distinguishable in its facts from Louthian v. Ft. W. & D. C. Ry. Co., 50 Tex. Civ. App. 613, 111 S. W. 666, and should not be controlled thereby. The motion for rehearing is overruled.